STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

JOHNELLA RICHMOND MOSES,
Personal Representative of the Estate of
MARIE MOSES IRONS, Deceased,

Hon.  Nanci J. Grant
Case No.: 05-067104-NH

     Plaintiff,

v

PROVIDENCE HOSPITAL AND
MEDICAL CENTERS, INC., a domestic
nonprofit corporation and PAUL LESSEM,
M.D.

     Defendants

_____/

SMITH & GIBSON, P.C.

JOSEPH C. SMITH (P25480)
JULIE C. GIBSON (P34619)
2000 Town Center, Suite 1900
Southfield, MI 48075
(248) 351-8737

_____/

KITCH DRUTCHAS WAGNER
VALITUTTI & SHERBROOK

RALPH F. VALITUTTI, JR.  (P26128)
RYAN D. EWLES (P64647)
Attorneys for Defendants
One Woodward Avenue, Suite 2400
Detroit, MI 48226-5485
313-965-7905

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO STAY AND FOR LEAVE
TO FILE FIRST AMENDED NOI, FIRST AMENDED COMPLAINT AND FIRST
AMENDED AFFIDAVIT OF MERIT AND BRIEF IN SUPPORT AND AFFIDAVIT OF
SERVICE**

NOW COME defendants Providence Hospital and Medical Centers, Inc., and

Paul Lessem, M.D., by and through their attorneys KITCH DRUTCHAS WAGNER

VALITUTTI & SHERBROOK and in response and opposition to plaintiffs' motion to lift

stay and for amendment of complaint state as follows:

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND COUNSELORS
One Woodward Avenue,
Suite 2400
Detroit, Michigan
48226-5485

(313) 965-7900

## A.    Motion To Lift Stay

1.    Plaintiff currently has pending in federal district court, on remand from the Sixth Circuit Court of Appeals, a claim against Providence Hospital and Medical Center, alleging that Dr. Lessem's discharge of Mr. Howard violated federal law, specifically EMTALA, and seeking damages arising out of Mr. Howard's subsequent murder of Marie Moses Irons.

2.    This action asserts state law malpractice claims against the Hospital and Dr. Lessem, arising out of the exact same facts—the care and discharge of Mr. Howard, and the exact same damages—the death of Marie Moses Irons, on which the Federal claim is based.

3.    Michigan law generally prohibits a plaintiff from filing multiple lawsuits in more than one forum, state or federal, seeking the same damages, even where additional or different defendants are named, pursuant to MCR 2.116(C)(6), incorporating the principles of the common law doctrine of abatement.

4.    The federal district court did previously dismiss the state malpractice claims (over which the district court exercised jurisdiction on motion of plaintiff) when granting summary judgment as to the EMTALA; however, now that the EMTALA claim is reinstated, the district court no doubt would be willing to assert supplemental jurisdiction over these state law claims against these two defendants, under Fed Civ R P 20 and 28 USC 1367(a).

5.    As such, the stay of this matter should be continued until such time as the district court accepts or rejects supplemental jurisdiction.

(a)    If the district court accepts jurisdiction, this matter should be dismissed without prejudice.

Sixth Drachan
Wagner Vallenti &
Sherbrook
[illegible address lines]
DETROIT, MICHIGAN
48226-1485

(313) 965-7900

(b)    If plaintiff declines to move to join these claims to the federal claim, defendants will move to dismiss pursuant to MCR 2.116(C)(6).

(c)    If the district court refuses supplemental jurisdiction then, and only then should this Court lift the stay and allow this matter to proceed.

## B.   Motion To Amend

6.    Plaintiff's motion to amend to add a common law claim against defendants for failure to warn or protect third party, nonpatient Ms. Moses Irons from patient Mr. Howard should be denied as futile.

7.    MCL 330.1946, a violation of which is already alleged here in the original complaint, is plaintiff's exclusive remedy against defendants for the alleged failure to warn or protect a nonpatient third party such as Ms. Irons.

8.    Defendants submit that the Supreme Court's recent decision in *Dawe v Dr Reuven Bar-Levav & Assocs, PC*, 485 Mich 20; 780 NW2d 272 (2010), did not address, and did not alter longstanding Michigan law that a claim against a mental health practitioner for failure to warn or protect a nonpatient third party is governed by, and limited to the provisions of MCL 330.1946.

9.    The issue in *Dawe v Dr Reuven Bar-Levav & Assocs, PC,* was entirely different, in that the Court addressed the question of whether MCL 330.1946 eliminated a common law malpractice claim <u>by the patient</u>, <u>not</u> a claim by a third party.

10.    As, such, plaintiff cannot state a claim against defendants for failure to warn or protect other than that already alleged in the original complaint, the amendment would be futile and should be properly denied.

Kitch Drutchas
Wagner Valitutti &
Sherbrook
A PROFESSIONAL LIMITED LIABILITY COMPANY
One Woodward Avenue,
Suite 2400
Detroit, Michigan
48226-5485

(313) 965-7900

WHEREFORE defendants Providence Hospital and Medical Centers, Inc., and Paul Lessem, M.D., request that this Honorable Court deny plaintiff's motion to lift the stay until such time as plaintiff has first sought to reinstate these claims in Federal Court, with the now pending EMTALA claim, and that the Court in any event deny as futile plaintiff's motion to amend the complaint to allege a claim which fails to state a claim.

Respectfully submitted,

KITCH DRUTCHAS WAGNER
VALITUTTI & SHERBROOK

By: _____
RALPH F. VALITUTTI, JR. (P26128)
RYAN D. EWLES (P64647)
Attorneys for Defendants
One Woodward Avenue, Suite 2400
Detroit, MI 48226-5485
313-965-7905
Ralph.Valitutti@kitch.com
Ryan.Ewles@kitch.com

Dated: November 5, 2010

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AT LAW AND PROCTORS
One Woodward Avenue,
Suite 2400
Detroit, Michigan
48226-5485

(313) 965-7900

## BRIEF IN SUPPORT

**I.** **The Court Should Deny Plaintiff's Motion To Lift Stay.**

Plaintiff currently has pending in federal district court, on remand from the Sixth Circuit Court of Appeals, a claim against Providence Hospital and Medical Center, alleging that Dr. Lessem's discharge of Mr. Howard violated federal law, specifically EMTALA, and seeking damages arising out of Mr. Howard's subsequent murder of Marie Moses Irons.

This action asserts state law malpractice claims against the Hospital and Dr. Lessem, arising out of the exact same facts—the care and discharge of Mr. Howard, and the exact same damages—the death of Marie Moses Irons, on which the Federal claim is based.

Michigan law generally prohibits a plaintiff from filing multiple lawsuits in more than one forum, state or federal, seeking the same damages, even where additional or different defendants are named, pursuant to MCR 2.116(C)(6), incorporating the principles of the common law doctrine of abatement.

The District Court did previously dismiss the state malpractice claims (over which the district court exercised jurisdiction on motion of plaintiff) when granting summary judgment as to the EMTALA; however, now that the EMTALA claim is reinstated, the district court no doubt would be willing to assert supplemental jurisdiction over these state law claims against these defendants, under Fed Civ R P 20 and 28 USC 1367(a).

As such, the stay of this matter should be continued until such time as the district court accepts or rejects supplemental jurisdiction.

(a)      If the district court accepts jurisdiction, this matter should be dismissed without prejudice.

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AT LAW OFFICES
ONE WOODWARD AVENUE
SUITE 2400
DETROIT, MICHIGAN
48226-5485

(313) 965-7900

(b)     If plaintiff declines to move to join these claims to the federal claim,

defendants will move to dismiss pursuant to MCR 2.116(C)(6).

(c)     If the district court refuses supplemental jurisdiction then, and only then

should this Court lift the stay and allow this matter to proceed.

MCR 2.116(C)(6) states that that a motion for summary disposition may be

based on the grounds that "[a]nother action has been initiated between the same parties

involving the same claim." The purpose of this subrule has been stated as follows:

> The courts quite uniformly agree that parties may not be harassed by new
> suits brought by the same plaintiff involving the same questions as those
> in pending litigation. If this were not so repeated suits involving useless
> expenditures of money and energy could be daily launched by a litigious
> plaintiff involving one and the same matter. Courts will not lend their aid to
> proceedings of such a character, and the holdings are quite uniform on
> this subject. [*Darin v Haven*, 175 Mich App 144, 148; 437 NW2d 349
> (1989), quoting *Chapple v National Hardwood Co*, 234 Mich 296, 298; 207
> NW 888 (1926).]

In *Darin v Haven*, 175 Mich App 144; 437 NW2d 349 (1989), the trial court

granted the defendant's motion for summary disposition brought pursuant to MCR 2.116

(C)(6). In *Darin*, plaintiffs filed a 13-count Complaint against named defendants in U.S.

District Court for the Eastern District of Michigan. Count I through IV of plaintiff's federal

Complaint alleged federal civil rights violations. The remaining nine counts alleged

violations of the Michigan Constitution and various common-law causes of action. The

federal district court granted defendant's summary judgment in the federal claims and

ordered plaintiffs' pendent state claims against defendants dismissed. Plaintiffs filed a

claim of appeal with the Sixth Circuit and between entry of the order denying plaintiffs'

Motion for Reconsideration and the filing of their claim of appeal, plaintiffs filed an action

in Oakland County Circuit Court to pursue the nine state law claims which had been

dismissed without prejudice by the federal court. Defendants brought a motion pursuant

to MCR 2.116 (C)(6) and the trial court granted the motion and the Court of Appeals affirmed the grant of summary disposition.  The Court of Appeals found that the Michigan Supreme Court has, in a number of cases, found the court rule and its predecessor plea of abatement applicable where the other action was first initiated and commenced in federal court.  *Darin, supra.*

The rule is clear that, upon a showing of the pendency of a federal district court action initiated between the same parties involving the same claim, defendants are entitled to dismissal pursuant to MCR 2.116 (C)(6).  This is true even if all the parties are not exactly the same.  Rather, the court looks to see whether or not the two actions between some of the parties are based on the same, or substantially the same, cause of action.  *Candler Roofing v Dickinson*, 149 Mich App 593 (1986).  In *Candler*, the plaintiff argued that he should be able to pursue two claims because there was an additional party in one of the cases.  The court found that the presence of one of the additional party in one of the suits did not inject new theories of standing, new claims, or new defenses.  Rather, that party's position as a party in one suit did not alter the essential identity of the parties between the two suits.  The Court stated as follows:

> However, MCR 2.116 (C)(6) does not require that all the parties and all the issues be identical.  Rather, the two suits must be open 'between the same parties' and 'involving the same claims.'  Thus, 'complete identity of the parties is not necessary' and the two suits 'must be based on same or substantially the same cause of action.'  *Ross v Onyx Oil & Gas Corp*, 128 Mich App 660, 666-667; 341 NW2d 783 (1983).  [*Candler Roofing* at 598.]

In the instant action, the addition of Dr. Lessem as a party defendant in the state action does not alter the essential identity of the parties between the two suits.  By his presence in one suit, he does not inject new theories of standing or new claims or new defenses.  This was the same analysis that the court came to in *Candler,* at 599.

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND COUNSELORS
One Woodward Avenue,
Suite 2400
Detroit, Michigan
48226-5485
(313) 965-7900

The Supreme Court has also addressed the issue of an additional parties in *Chapple v National Hardware Company*, 234 Mich 296 (1926). In *Chapple*, the plaintiff filed suit against Joseph Jacobson in Kent County Circuit court. He subsequently filed a similar claim in Montcalm County in which the corporation, Jacobson and several other different defendants were named. Jacobson sought abatement of the second suit, which the trial court denied. The Michigan Supreme Court reversed the Circuit Court, holding:

> May these holdings be circumvented and a different holding successfully invoked by adding new defendants or subtracting some of the old ones, but continuing the mover who seeks to abate the successive suits as a continuing defendant where the plaintiff is the same, and the same matters are involved in all the cases? We think upon reason and authority this question must be answered in the negative and we think it so answered by this court in *Pinel v Campsel*, 190 Mich 347. It will be noted that in that case a suit in equity was pending in the federal court in which the rights of all the parties could be adjudicated. In the case there before us, the parties did not include all of those who were parties to the federal case but both parties to the suit in the state court were parties to the suit in the federal court. We held that the plea in abatement was good and to sustain the holding cited *Emery v Chappel*, 148 NC 327 (62 SE 411); *Van Vleck v Anderson*, 136 Iowa 366 (113 NW 853); and *Haas v Righeimer*, 220 ILL 193 (77 NE 69); in all three of which cases it was held the complete identity of parties was not necessary to invoke the doctrine of former suit pending. *Chappel, supra*, p. 298. [*Candler*, 599-600.]

The District Court did previously dismiss the state malpractice claims (over which the district court exercised jurisdiction on motion of plaintiff) when granting summary judgment as to the EMTALA, However, now that the EMTALA claim is reinstated, the district court no doubt would be willing to assert supplemental jurisdiction over these state law claims against these defendants, under Fed Civ R P 20 and 28 USC 1367(a).

As such, the stay of this matter should be continued until such time as the district court accepts or rejects supplemental jurisdiction. (a) If the district court accepts jurisdiction, this matter should be dismissed without prejudice. (b) If plaintiff declines

Kirk Dratchas
Wagner Valkheff &
Sherbrook
LOCATION AND CORPORATION
One Woodward Avenue,
Suite 2400
Detroit, Michigan
48226-5443

(313) 965-7900

to move to join these claims to the federal claim, defendants will move to dismiss pursuant to MCL 2.116(C)(6).  (c) If the district court refuses supplemental jurisdiction then, and only then should this Court lift the stay and allow this matter to proceed.

## II.    The Court Should Deny Plaintiff's Motion To Amend As Futile.

Plaintiff's motion to amend to add a common law claim against defendants for failure to warn or protect third party, nonpatient Ms. Moses Irons, from patient Mr. Howard should be denied as futile.  A motion to amend the complaint may be denied where the amendment would be futile, or unduly prejudicial to the defendant.   *Weymers v Khera*, 454 Mich 639, 658-659; 563 NW2d 647 (1997).  An amendment is futile if it merely adds allegations which fail to state a claim.   *Lane v KinderCare Learning Centers, Inc*, 231 Mich App 689, 697; 588 NW2d 715 (1998) (amendment to add allegations of violations of administrative regulations futile where no private cause of action exists for such violations).

Defendants submit that plaintiff's proposed new common law claims asserting that defendants had a duty to warn or protect Ms. Moses Irons, a nonpatient third party, from the threat of harm from defendant's patient, Mr. Howard, is still barred by MCL 330.1946, and the long line of Michigan cases specifically addressing the nonviability of such a claim by a third party nonpatient under the statute.  MCL 330.1946, a violation of which is already alleged here in the original complaint, is plaintiff's exclusive remedy against defendants for the alleged failure to warn or protect a nonpatient third party such as Ms. Irons.

Defendants submit that the Supreme Court's recent decision in *Dawe v Dr Reuven Bar-Levav & Assocs, PC*, 485 Mich 20; 780 NW2d 272 (2010), did not address, and did not alter longstanding Michigan law, as set forth in *Swan v Wedgwood Christian*

Klein Dretchen
Wagner Vallenti &
Sherbrook
ATTORNEYS AND COUNSELORS
One Woodward Avenue
Suite 1400
Detroit, Michigan
48226-5498

(313) 965-7900

*Youth & Family Services, Inc*, 230 Mich App 190, 195; 583 NW2d 719 (1998), that a claim against a mental health practitioner for failure to warn or protect a <u>nonpatient third party</u> is governed by, and limited to, the provisions of MCL 330.1946.

The issue in *Dawe v Dr Reuven Bar-Levav & Assocs, PC,* was entirely different then that here, in that the Court addressed the question of whether MCL 330.1946 eliminated a common law malpractice claim <u>by the patient</u>, <u>not</u> a claim by a third party. As the Court stated, and resolved, this issue before it:

> In this case we must decide whether a <u>plaintiff-patient may pursue a common-law medical malpractice claim against his or her mental health professional</u> when the mental health professional allegedly negligently placed the plaintiff in danger of harm at the hands of another patient or whether the Mental Health Code, in MCL 330.1946, abrogated such a common-law claim. We hold that MCL 330.1946 <u>did not abrogate a plaintiff-patient's common-law medical malpractice claim when the mental health professional's separate duty arising out of his or her special relationship with the patient would apply</u> and no "threat as described in [MCL 330.1946(1)]" was communicated to the mental health professional. MCL 330.1946(1). Therefore, we reverse the judgment of the Court of Appeals. [*Dawe v Dr Reuven Bar-Levav & Assocs*, PC, 485 Mich 20, 22; 780 NW2d 272 (2010).]

Therefore, *Dawe* has no application here, where the plaintiff is a third party, and asserts not a common law medical malpractice action, but a third party failure to warn claim which is directly within the scope, and limitations of, MCL 330.1946. Plaintiff's motion to amend should be denied as futile.

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND COUNSELORS
One Woodward Avenue,
Suite 2400
Detroit, Michigan
48226-5485

(313) 965-7900

WHEREFORE defendants Providence Hospital and Medical Centers, Inc., and Paul Lessem, M.D., request that this Honorable Court deny plaintiff's motion to lift the stay until such time as plaintiff has first sought to reinstate these claims in Federal Court, with the now pending EMTALA claim, and that the Court in any event deny as futile plaintiff's motion to amend the complaint to allege a claim which fails to state a claim.

Respectfully submitted,

KITCH DRUTCHAS WAGNER VALITUTTI & SHERBROOK

By:_____
RALPH F. VALITUTTI, JR. (P26128)
RYAN D. EWLES (P64647)
Attorneys for Defendants
One Woodward Avenue, Suite 2400
Detroit, MI 48226-5485
313-965-7905
Ralph.Valitutti@kitch.com
Ryan.Ewles@kitch.com

Dated: November ___5___, 2010

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND COUNSELORS
ONE WOODWARD AVENUE,
Suite 2400
Detroit, Michigan
48226-5485

(313) 965-7900

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

JOHNELLA RICHMOND MOSES,
Personal Representative of the Estate of
MARIE MOSES IRONS, Deceased,

Hon.  Nanci J. Grant

Case No.:  05-067104-NH

     Plaintiff,

v

PROVIDENCE HOSPITAL AND
MEDICAL CENTERS, INC., a domestic
nonprofit corporation and PAUL LESSEM,
M.D.

     Defendants

_____/

## AFFIDAVIT OF SERVICE

STATE OF MICHIGAN)
                )SS.
COUNTY OF MACOMB)

    LEE ANN ALLEN, being first duly sworn, deposes and says that she is employed with the firm of KITCH DRUTCHAS WAGNER VALITUTTI & SHERBROOK and that on the _5th_ day of November, 2010, she personally served upon: JOSEPH C. SMITH, ESQ./JULIE C. GIBSON, ESQ., 2000 Town Center, Suite 1900, Southfield, MI 48075, the following: <u>Defendants' Response to Plaintiff's Motion to Stay And for Leave to File First Amended NOI, First Amended Complaint and First Amended Affidavit of Merit, Brief in Support</u> and this Affidavit of Service by having same enclosed in an envelope with postage thereon fully and deposited in a United States postal receptacle.  Further Affiant saith not.

_____
Lee Ann Allen

Subscribed and sworn to before me
this _5th_ day of November, 2010.

_____
Linda M. Pappas, Notary Public
Macomb County, MI/Acting in Macomb County, MI
My Commission Expires:  12/07/2016

MTC01\266906.01

Kitch Drutchas
Wagner Valitutti &
Sherbrook
One Woodward Avenue,
Suite 2400
Detroit, Michigan
48226-3485

(313) 965-7900

## STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

**JOHNELLA RICHMOND MOSES**, Personal
Representative of the Estate of
**MARIE MOSES IRONS**, deceased

Plaintiff,

vs.

**PROVIDENCE HOSPITAL AND MEDICAL
CENTERS, INC.**, a domestic nonprofit corporation,
and **PAUL LESSEM, M.D.**

Defendants.

"OAKLAND"  05-067104-NH
"COUNTY"

JUDGE NANCI J. GRANT
MOSES.JOHNELL   v   PROVIDENCE H(

| | |
|---|---|
| **JOSEPH C. SMITH (P25480)**<br>**JULIE A. GIBSON (P34619)**<br>**Smith & Gibson, P.C.**<br>Attorneys for Plaintiff<br>2000 Town Center, Suite 1900<br>Southfield, MI 48075<br>(248) 351-8737 | **RALPH F. VALITUTTI, JR. (P26128)**<br>**Kitch, Drutchas, Wagner,**<br>**Valitutti & Sherbrook**<br>Attorneys for Defendant<br>10 South Main Street, Suite 200<br>Mt. Clemens, MI 48043<br>(586) 493-4431 |

## PLAINTIFF'S MOTION TO LIFT STAY AND FOR LEAVE TO FILE FIRST AMENDED NOI, FIRST AMENDED COMPLAINT AND FIRST AMENDED AFFIDAVIT OF MERIT

Plaintiff, **Johnella Richmond Moses**, by her attorneys, **Smith & Gibson, P.C.**, files the following **Motion To Lift Stay And For Leave To File First Amended NOI, First Amended Complaint, And First Amended Affidavit of Merit**. The grounds and reasons for this Motion are as follows.

### Introduction

1.      This is a medical negligence action that arises out of defendants' discharge of Christopher Walter Howard ("Howard") from Providence Hospital on December 19, 2002.

Howard had been admitted to Providence Hospital after exhibiting signs and symptoms of an acute mental illness. However, when Howard's medical insurer declined to pay for his continued hospitalization, defendants discharged Howard from the hospital without initiating the psychiatric treatment that was necessary to stabilize his condition. The discharge was carried out even though Howard represented a foreseeable risk of injury to his wife, Marie Moses-Irons ("Ms. Moses-Irons" or "plaintiff's decedent"). Ten days after his discharge, Howard killed his wife.

## Background Facts

2.      On December 13, 2002, Ms. Moses-Irons took her husband to the emergency department of Providence Hospital because he was exhibiting signs and symptoms of an acute mental illness. Ms. Moses-Irons reported to hospital personnel that Howard was speaking inappropriately, his speech was slurred, and he was delusional and confused. Howard was also vomiting repeatedly and he complained of severe headaches. Ms. Moses-Irons further reported that Howard had made a statement that he had "bought caskets." After his evaluation in the emergency room, Howard was admitted to the hospital.

3.      During his hospitalization, the consulting psychiatrist who saw Howard was defendant Paul Lessem, M.D. ("Dr. Lessem"). In order to evaluate Howard, Dr. Lessem met with *both* Howard and his wife, Ms. Moses-Irons, on December 16th and 17th, 2002. After an hour-long session with Howard and his wife on December 17, 2002, Dr. Lessem made the following notations in the patient's chart: **"Delusional Disorder- Atypical Psychosis."** Dr. Lessem's note also states: **"Wife is fearful of taking him home."**

2

4.      Dr. Lessem's plan was to admit Howard to Unit 4 East, the hospital's secured psychiatric unit.    At 5:10 p.m. on December 17, 2002, Dr. Lessem signed the following order:

> **"Will accept patient on 4 East if patient's insurance will accept criteria. Atypical psychosis with somatization and depression. Please observe carefully for any indications of suicidal ideation and behavior."**

5.      On 4 East, Howard would have been treated for his acute mental illness. More likely than not, his treatment would have included the administration of psychotropic medication that would have stabilized his condition.   However, after Howard's medical insurer declined to cover the cost of Howard's continued hospitalization, the defendants decided to discharge Howard from the hospital.  Notwithstanding Howard's instability, and his need for additional assessment and treatment, Howard was discharged from the hospital on December 19, 2002.   The hospital's pretext for discharging Howard has alternated between an unsubstantiated claim that Howard "declined" to be admitted to 4 East, to a claim that his condition had stabilized, and he no longer required admission to 4 East.

6.      After making the decision to discharge Howard, Dr. Lessem documented his final encounter with Howard's wife in a handwritten note:

> **Explained to wife no grounds for commitment. Elicited no history of violence or obnoxious (?) behavior. She will put him in a hotel until family gets him. They are coming from Minnesota.**

3

7.      On December 29, 2002, Howard killed Ms. Moses-Irons with a hatchet/knife.

### Plaintiff's Claims

8.      Plaintiff claims Howard was discharged from the hospital in an unstable psychiatric condition, in violation of the federal Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 USC 1395dd.   In addition to plaintiff's EMTALA claim, plaintiff contends that defendants' conduct constituted professional negligence under state law.  According to plaintiff's state court complaint, defendants were professionally negligent in their psychiatric management of Howard's condition and they violated their statutory duties under MCL 330.1946.

9.      The statutory duty created by MCL 330.1946 arises if: (1) a patient makes a threat of physical violence; (2) the threat is against a "reasonably identifiable person;" and (3) the patient has the apparent intent and ability to carry out the threat.  When these conditions exist, the mental health professional may satisfy his/her statutory duty to the third party in one of two ways.  First, the mental health professional may hospitalize the patient or initiate proceedings to hospitalize the patient.  Alternatively, the mental health professional may communicate the threat to the third person, as well as to the local law enforcement authority.

10.      Prior to the enactment of MCL 330.1946, Michigan common law imposed upon mental health professionals a general common law duty to exercise reasonable care to

4

warn and protect third parties who might be injured by their patients. *Davis v. Lhim*, 124 Mich App 291, 298-301; 335 NW2d 481 (1983), rev'd on other grounds sub nom *Canon v. Thumudo*, 430 Mich 326; 422 NW2d 688 (1988).  However, after the enactment of MCL 330.1946, and before the filing of plaintiff's complaint in this case, the Michigan Court of Appeals held that MCL 330.1946 respresents the *exclusive* duty that a psychiatrist owes to a third party who may be injured by his/her patient. See *Swan v. Wedgwood Christian Youth & Family Servs.*, 230 Mich. App. 190, 195-196; 583 N.W.2d 719 (1998).

11.    The *Swan* Court held that, with the passage of MCL 330.1946, the Michigan Legislature sought to codify the common law duty that mental health professionals owe to third parties in a "duty to warn" statute. *Id.* at 196.  Hence, under *Swan,* a mental health professional's duty to a third party only arises under the conditions set forth in the statute, i.e., the patient makes a threat of violence against a "reasonably identifiable" person, *and* the patient has the apparent intent and ability to carry out that threat.  Once those conditions are present, the mental health professional's only obligation is to take those actions specifically prescribed by the statute.  In effect, the *Swan* court held that MCL 330.1946 abrogated all other common law causes of action that third parties may have had against mental health professionals before the enactment of the statute.

12.    In view of the *Swan* Court's interpretation of MCL 330.1946, plaintiff did not specifically allege that defendants' breached their common law duty to exercise reasonable care for the protection of third parties, such as plaintiff's decedent, who might be injured by Howard.

13.     On March 10, 2010, the Michigan Supreme Court issued an opinion addressing the scope of MCL 330.1946 and its impact on the common law duty that mental health professionals owe to third parties. *Dawe v. Dr. Reuven Bar-Levav & Assocs.*, P.C., 485 Mich. 20, 780 N.W.2d 272 (2010). The Court noted that before the enactment of MCL 330.1946, psychiatrists in Michigan owed a common-law duty of reasonable care to their patients and, potentially, a duty to warn third persons of, or protect them from, potential dangers posed by their patients. *Id. at 27.* The Court held that the legislative enactment of MCL 330.1946 was not intended to abrogate a mental health professional's common-law duty to warn or protect others. *Id. at 28.* The statutory duty crated by MCL 330.1946 apples only to a patient's communication of a threat of violence against a "reasonably identifiable." Michigan common law continues to apply to those circumstances not covered by the statute. *Id.* at 29-30.

## Procedural History

14.     On December 15, 2004, plaintiff timely filed an action in the U.S. District Court, alleging that the death of plaintiff's decedent was a direct and proximate result of the defendants' violation of the EMTALA on December 19, 2002. Pursuant to 42 USC 1395dd (d)(3) and 42 USC 1331, the U.S. District Court has original jurisdiction over plaintiff's EMTALA claim, precluding plaintiff from pursuing this claim in state court.

15.     On December 11, 2004, plaintiff timely served upon Dr. Lessem and Providence Hospital her pre-suit Notice of Intent (NOI), which asserted claims for medical malpractice under state law. Plaintiff's NOI claims that Dr. Lessem breached the applicable

standard of care by failing to evaluate and stabilize Howard's condition, and that he breached the duties imposed upon him by MCL 330.1946. **(Exhibit 1)**

16.     On June 16, 2005, following expiration of the statutory waiting period, plaintiff timely filed the instant action in Oakland County Circuit Court against Dr. Lessem and Providence Hospital.  Plaintiff's Complaint **(Exhibit 2)** and Affidavit of Merit **(Exhibit 3)** repeat the claims set forth in plaintiff's NOI.

17.     On August 18, 2005, plaintiff sought leave in the U.S. District Court to file a First Amended Complaint, joining the state law claim, which was pending in Oakland County Circuit Court, with the federal EMTALA claim.  Plaintiff requested the U.S. District Court to exercise its supplemental jurisdiction over plaintiff's state law claim, as authorized by Federal Rule of Civil Procedure 20.  After a hearing on plaintiff's motion, Magistrate Virginia Morgan entered an order in U.S. District Court on September 22, 2005, granting plaintiff leave to file an amended complaint, which joined plaintiff's federal and state claims.

18.     In their answer to plaintiff's First Amended Complaint filed in the federal court action, defendants asserted by way of an affirmative defense that the filing of plaintiff's medical malpractice claim in federal court is barred by the statute of limitations. Additionally, defendants filed a motion to dismiss the state court medical malpractice action on the grounds that a duplicate action was pending in federal court.

19.     On June 23, 2006, this honorable court entered an order denying defendant's motion to dismiss the state action, and granting plaintiff's request to stay the state court proceedings until the U.S. District Court rules on the statute of limitations issue, or until defendants are precluded from bringing a statute of limitations challenge in the federal action.  **(Exhibit 4)**  Since the state court action had been timely filed, plaintiff requested defendants to waive their statute of limitations defense in the federal action.  Defendants declined to waive their statute of limitations defense.

20.     Defendants have filed no motion, nor taken any other action to adjudicate their claim that the applicable statute of limitations precludes plaintiff from prosecuting her medical malpractice claim in federal court.

21.     On August 2, 2007, United States District Judge Anna Diggs Taylor entered an order granting defendants' Motion for Summary Judgment and dismissing plaintiff's EMTALA claims against Providence Hospital and Dr. Lessem.  The same order provided: "…the Court will not retain jurisdiction over Plaintiff's state law claims."  **(Exhibit 5)**

22.     On April 6, 2009, the United States Court of Appeals for the Sixth Circuit reversed the district court's order of summary judgment in favor of defendant Providence Hospital, but affirmed the order of summary judgment in favor of defendant Dr. Lessem.  *Moses v. Providence Hosp. & Med. Ctrs., Inc*, 561 F.3d 573 (6th Cir. Mich. 2009).  On July

8

17, 2009, United States Court of Appeals for the Sixth Circuit denied defendants' motion for a rehearing en banc. *Moses v. Providence Hosp. & Med. Ctrs., Inc*, 573 F.3d 397 (6th Cir. 2009). On June 28, 2010, the United States Supreme Court denied defendants' Petition for Writ of Certiorari. *Providence Hosp. v. Moses,* 130 S. Ct. 3499 (U. S. 2010)

23.     In accordance with the Opinion and Order of the United States Court of Appeals for the Sixth Circuit, on September 13, 2010, Judge Taylor entered an order reinstating plaintiff's EMTALA claim against defendant Providence Hospital, only. **(Exhibit 6)** As a result of Judge Taylor's August 2, 2007, order, plaintiff's state claim for medical malpractice is no longer before the federal court. Further, Dr. Lessem is no longer a party to the federal court action.

### Relief Requested By This Motion

24.     In view of the foregoing, plaintiff is requesting leave to pursue its medical malpractice claim in state court. Plaintiff is also requesting the court to grant plaintiff leave to file her First Amended NOI **(Exhibit 7),** First Amended Complaint **(Exhibit 8)**, and First Amended Affidavit of Merit **(Exhibit 9**.)

25.     Consistent with the analysis set forth in *Dawe, supra,* the purpose of the amended pleadings is to allege that defendants breached their common-law duty to warn and protect plaintiff's decedent. The amended pleadings include specific common law claims that defendants failed to treat Howard in accordance with accepted standard of care when they knew, or should have known, that such failure would create an unreasonable risk of

injury to Ms. Moses-Irons. The amended pleadings also include specific common law claims that defendants failed to provide Ms. Moses-Irons with accurate information regarding the severity of Howard's mental illness and the gravity of the danger he posed.

26.     Granting the relief sought by this motion will not create an undue delay in the adjudication of this case. With the exception of the discovery deposition of plaintiff's psychiatric expert, Gerald A. Shiener, M.D., discovery in this case is essentially complete. The discovery pertaining to plaintiff's additional claims has already been obtained and plaintiff does not anticipate requesting additional discovery.

27.     In support of this motion, plaintiff relies upon MCR 2.118, the authorities cited herein and **Plaintiff's Brief In Support Of Motion To Lift Stay And For Leave To File First Amended Complaint, First Amended NOI, And First Amended Affidavit of Merit.**

**WHEREFORE,** plaintiff respectfully requests this honorable court to enter an order lifting its stay of proceedings and permitting plaintiff to prosecute its medical malpractice claims in the Circuit Court for the County of Oakland. Further, plaintiff requests this honorable court to grant plaintiff leave to file the attached First Amended NOI, First Amended Complaint, and First Amended Affidavit of Merit

Respectfully submitted,

SMITH & GIBSON, P.C.

By: _____
JOSEPH C. SMITH (P25480)
JULIE A. GIBSON (P34619)
Attorneys for Plaintiff
2000 Town Center, Suite 1900
Southfield, MI 48075
(248) 351-8737

Dated:  October 15, 2010

11

**STATE OF MICHIGAN**

**IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND**

JOHNELLA RICHMOND MOSES, Personal
Representative of the Estate of MARIE
MOSES-IRONS, Deceased,

      Plaintiff,

v.

PROVIDENCE HOSPITAL and MEDICAL
CENTERS, INC., a domestic nonprofit corporation,
And PAUL LESSEM, M.D.,

      Defendants.

°OAKLAND° °COUNTY° **05-067104-NH**

JUDGE NANCI J. GRANT
MOSES,JOHNELL   v   PROVIDENCE HO

_____/

| | |
|---|---|
| JOSEPH C. SMITH (P25480) | RALPH F. VALITUTTI, JR. (P26128) |
| JULIE A. GIBSON (P34619) | RYAN D. EWLES (P64647) |
| Attorneys for Plaintiff | Attorney for Defendants |
| 2000 Town Center, Suite 1900 | 10 S. Main Street, Suite 200 |
| Southfield, Michigan 48075 | Mt. Clemens, Michigan 48043 |
| (248) 351-8737 | (586) 493-4431 |

_____/

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO LIFT STAY
AND FOR LEAVE TO FILE FIRSTAMENDED NOI, FIRST AMENDED
COMPLAINT, AND FIRST AMENDED AFFIDAVIT OF MERIT**

Plaintiff, **Johnella Richmond Moses**, by her attorneys, **Smith & Gibson, P.C.**, files

the following **Brief in Support of Motion To Lift Stay And For Leave To File First**

**Amended NOI, First Amended Complaint, And First Amended Affidavit of Merit.**

## I.     Statement Of Relevant Facts

This is a medical negligence action that arises out of defendants' discharge of Christopher Walter Howard ("Howard"), a mentally unstable patient, from Providence Hospital on December 19, 2002.   During Howard's hospitalization, the consulting psychiatrist met with *both* Howard and his wife ("plaintiff's decedent") on two occasions. The psychiatrist was aware that Howard had spoken of purchasing coffins, and that his wife feared for her safety and the safety of her children.  The psychiatrist diagnosed Howard's condition as a "delusional disorder with atypical psychosis."  The psychiatrist wrote an order for Howard to be admitted to the hospital's psychiatric unit for treatment and stabilization, and Howard was started  on psychotropic medication.

However, notwithstanding the fact that Howard had been diagnosed with an acute mental illness, when Howard's insurance carrier declined to pay for Howard's continued hospitalization, defendants cancelled Howard's transfer to the hospital's psychiatric unit and discharged him from the hospital.  One physician note claimed that Howard had "declined" admission to the hospital's psychiatric unit.   This claim is unsubstantiated.   Another physician note claimed that Howard no longer needed to be hospitalized.  Plaintiff contends these notes were mere pretexts for defendants' true motive of discharging Howard due to their belief that he could not pay for the hospital's services.

In his last conference with Howard's wife, the psychiatrist advised plaintiff's decedent that there was no basis for having Howard involuntarily committed.  Also, he

concurred with a plan to have Howard stay in a hotel until members of his biological family could travel from Minnesota to Michigan to get Howard. Ten days after his discharge, Howard killed plaintiff's decedent.

At the time plaintiff filed her Notice of Intent (December 15, 2004) and her initial complaint (June 16, 2005), the Michigan Court of Appeals had held that the exclusive duty a psychiatrist owes to third parties is set forth in MCL 330.1946. See *Swan v. Wedgwood Christian Youth & Family Servs.*, 230 Mich. App. 190, 195-196; 583 N.W.2d 719 (1998). The duties created by MCL 330.1946 arise only when a patient communicates a threat of violence against a "reasonably identifiable" person to a mental health care professional. The professional may discharge his/her duty to the third party in one of two ways. The professional may hospitalize the patient or initiate proceedings to hospitalize the patient. Alternatively, the professional may communicate the threat to the third person, as well as the local law enforcement authority.

In effect, the *Swan* court held that MCL 330.1946 abrogated any other common law duty a psychiatrist may have had to warn and protect third parties from foreseeable injuries caused by their patients. In light of *Swan, supra*, plaintiff's complaint did not allege that defendants owed plaintiff's decedent a common law duty to warn and protect, independent of the statutory duties created by MCL 330.1946. However, the Michigan Supreme Court has recently held that MCL 330.1946 does not abrogate other common law duties a psychiatrist may have to protect third parties. *Dawe v. Dr. Reuven Bar-Levav & Assocs., P.C.*, 485 Mich. 20, 22, 28-30; 780 N.W.2d 272 (2010). In light of the holding and analysis

articulated by the Michigan Supreme Court in the *Dawe* case, plaintiff seeks leave to amend her NOI, Complaint, and Affidavit of Merit to allege common law causes of action consistent with the *Dawe* case.

Plaintiff is requesting leave to amend these pleadings in order to allege that defendants breached their common law duty: (1) to inform plaintiff's decedent that Howard's condition had not been stabilized on December 19, 2002; (2) to inform plaintiff's decedent that without immediate psychiatric hospitalization Howard's condition would likely deteriorate, and he would present a danger to himself and others; (3) to refrain from representing to plaintiff's decedent that Howard was stable enough to be discharged on December 19, 2002, when, in fact, he was discharged because his insurance company refused to pay for his treatment; and (4) to refrain from representing to plaintiff's decedent that there was no basis for having Howard involuntarily hospitalized on December 19, 2002. Plaintiff claims these acts and omissions were proximate causes of plaintiff's decedent death.

## II.      Argument

### A.      Under The Circumstances Of This Case, Plaintiff Is Entitled To Amend Her NOI, Complaint, And Affidavit of Merit.

Leave to amend pleadings should be freely granted when justice so requires.  MCR 2.118(A)(2).  In this regard, a plaintiff in a medical malpractice case has the same right as any other plaintiff to amend its pleadings. See generally *Doyle v. Hutzel Hospital*, 241 Mich

App 206, 615 N.W. 2d 759 (2000)  Moreover, when the amendment arises out of the same conduct, transaction or occurrence set forth in the original complaint, the filing of the amendment is deemed to relate back to the date of the original complaint, even though it may introduce new facts, a new theory, or even a different cause of action. *Id.,* at 219-220

    In rejecting the trial court's restrictive interpretation of the relation back rule set forth in MCR 2.118(D), the Court of Appeals in *Doyle* stated the following:

> **In sum, because the legal theories addressed in plaintiff's proposed amended complaint were derived from the same transactional setting (plaintiff's postoperative infection) as plaintiff's original complaint, the amendments relate back to the original complaint pursuant to MCR 2.118(D) and are not barred by the applicable statute of limitations. Therefore, we hold the trial court erred as a matter of law in ruling that plaintiff's proposed amended complaint did not relate back to the date her original complaint was filed.**

  *Id.,* at 219-220

As in *Doyle,* plaintiff's proposed amendments in the case at bar arise out of the same transactional setting that was pled in the original complaint.  Therefore, the amendment relates back to the original date that the complaint was filed and is not barred by the statue of limitations.

    Similarly, plaintiff's NOI and Affidavit of Merit may also be amended to include the additional common law theories of liability set forth in plaintiff's proposed amended complaint.  See *Bush v. Shabahang,* 484 Mich 156, 161; 772 N.W. 2d 272 (2009).  As a result of the 2004 amendment of MCL 600.5856, if a plaintiff files a timely NOI before commencing a medical malpractice action, the statute of limitations is tolled, despite "defects" in the NOI. *Id.,* at 161.  Where "defects" exist in the NOI, those defects should be

addressed in accordance with MCL 600.2301, which allows for the amendment of pleadings or the disregard of any error or defect, where the substantial rights of the parties are not affected and the cure is in the furtherance of justice. *Id.,* at 161. This mandate is met when a party makes a good-faith attempt to comply with the content requirements of MCL 600.2912b. *Id.,* at 161.

In the case at bar, plaintiff made a good-faith effort to comply with the content requirements of MCL 600.2912b. Plaintiff crafted her original NOI in accordance with controlling Michigan case law. Under a reasonable interpretation of *Swan, supra,* the only duties that defendants owed to plaintiff's decedent in connection with Howard's treatment were those duties codified in MCL 330.1946. As discussed in detail below, the Michigan Supreme Court recently concluded that MCL 330.1946 does not abrogate other common law duties that mental health professionals owe to third parties. *Dawe, supra.* In view of this clarification in the law, plaintiff should be permitted to amend her NOI, Complaint and Affidavit of Merit to include those common law causes of action consistent with the recent holding of the Michigan Supreme Court.

**B.    MCL 330.1946 Modifies Michigan Common Law Only With Respect To Those Circumstances Enumerated In The Statute; Under All Other Circumstances, Mental Health Professionals Continue To Have A Common Law Duty To Exercise Reasonable Care For The Protection Of Third Parties Who May Be Injured By Their Patients.**

In a seminal decision, the Michigan Supreme Court addressed the duties that mental health professionals owe to third parties who may be injured by the patients they treat. *Dawe, supra.* The *Dawe* case, involved a former patient of two psychiatrists, Drs. Reuven

and Leora Bar-Levav, who shot and wounded plaintiff, Elizabeth Dawe.  On June 11, 1999, the former patient returned to the defendants' office with a handgun.  After fatally shooting Dr. Reuven Bar-Levav, the former patient fired several rounds into a group therapy room, where plaintiff was participating in a group therapy session.  One person was killed and others, including plaintiff, were injured.  Plaintiff sued defendants, alleging that they were liable for common law medical malpractice, as well as violation of MCL 330.1946.

Following a jury verdict for plaintiff, the defendants appealed.  The Court of Appeals, in a split decision, held that the trial court erred by failing to grant defendants' motion for a directed verdict.  *Dawe v. Dr. Reuven Bar-Levav & Assocs.*, P.C., 279 Mich. App. 552, 761 N.W.2d 318 (2008).  With respect to the alleged violation of MCL 330.1946, the Court of Appeals found that plaintiff failed to present evidence that the gunman had communicated to defendants a threat of violence directed specifically against plaintiff.  *Id.,* at 569-570.  With respect to plaintiff's claim of medical malpractice, the Court of Appeals held that the legislature's enactment of MCL 330.1946 had abrogated defendants' common law duty to protect third parties from injuries caused by their patients:

> **Thus, we believe that the statute was specifically intended to expressly limit a mental-health practitioner's duty to that *"as provided in this section,"* thereby limiting a mental-health practitioner's *only* duty to protect to *only* those readily identifiable persons against whom a threat of physical violence is made.  In other words, we believe that it is clear that the Legislature intended to modify or abrogate any other conceivable duty that a mental-health professional may have to others...** *Id.* at 567

In his dissent, Judge Smolenski argued that, by its terms, MCL 330.1946 only modified Michigan common law in connection with the specific circumstances described in

the statute, i.e., where a patient communicates to a mental health professional a threat of physical violence against a reasonably identifiable third person. *Id.*, at 574-575. With respect to all other circumstances, Michigan common law regarding the duties mental health professionals owe to third parties remains viable. In analyzing the common law duties that mental health professionals owe to third parties, Judge Smolenski pointed out that, while the common law does not normally obligate one person to protect another from third parties, there are two exceptions to this general rule. First, such a duty to protect may arise where a "special relationship" exists either between the defendant and the victim, or the defendant and the third party who caused the injury. *Id.*, at 573, citing *Murdock v. Higgins*, 454 Mich 46, 54; 559 N.W.2d 639 (1997).

Second, all persons, including mental health professionals, have a common law duty to refrain from actively endangering others by their negligent conduct:

> **Even if MCL 330.1946(1) could be said to apply to all patients, even those patients who do not qualify as recipients, by its own terms, MCL 330.1946 only modifies a mental-health professional's common-law duty to warn or protect third parties from the acts of others. It does not apply to a mental-health professional's common-law duty to refrain from harming a third party through his or her own negligent acts, even where the ultimate harm is perpetrated by the mental-health professional's patient.**
>
> ***
>
> **[I] conclude that MCL 330.1946(1) does not abrogate a mental-health professional's duty to refrain from *actively* placing a third party in danger of harm at the hands of the mental-health professional's patients. (Citations omitted)** *Dawe,* 279 Mich App, at 576-577

The Michigan Supreme Court agreed with Judge Smolenski's conclusion that MCL 330.1946 did not abrogate the duties of a psychiatrist with respect to circumstances outside

of the criteria specified MCL 330.1946.  *Dawe*, 485 Mich at 20, 22, 28-30.  The Court began its analysis by reviewing the common law duties of a psychiatrist before the enactment of MCL 330.1946.  The Court acknowledged that, as a general rule, there is no duty that obligates one person to aid or protect another.  However, citing with approval *Murdock*, 454 Mich, at 55 n 11, the Court confirmed that there is an exception to this general rule where a "special relationship" exists, such as the psychiatrist-patient relationship.  *Dawe*, 485 Mich at 25-26.

In *Murdock*, which was relied upon in *Dawe, supra*, the Michigan Supreme Court held that the duty to protect an individual from harm caused by a third person arises out of "special relationship" *either* between the defendant and the victim, *or* between the defendant and the third party who caused the injury:

> **Generally, an individual has no duty to protect another who is endangered by a third party's conduct.  Where there is a duty to protect an individual from a harm by a third person, that duty to exercise reasonable care arises from a "special relationship" either between the defendant and the victim, or the defendant and the third party who caused the injury.  *Marcelletti v Bathani, 198 Mich. App. 655,664; 500 NW2d 124 (1993).*  Such a special relationship must be sufficiently strong to require a defendant take action to benefit the injured party.  *Samson v Saginaw Professional Bldg, Inc., 393* Mich 393, 406; 224 NW2d 843 (1975).**

> *Murdock, supra,* at 54

Included among the generally recognized "special relationships" that give rise to a duty to protect is the psychiatrist/patient relationship.  *Id.* at 55 n11.

9

Describing the common law duty of psychiatrists under Michigan law, the Michigan Supreme Court in *Dawe* stated the following:

> **In the psychiatrist-patient context, the common-law duty not only requires a psychiatrist to protect his or her patients but also to warn third persons or protect them from harm by a patient under certain circumstances, regardless of the psychiatrist's relationship with that third person. The status of the duty owed to third persons in Michigan law, however, was unclear before MCL 330.1946 was adopted. The duty was first recognized in Michigan in a Court of Appeals case that adopted the reasoning of the seminal California Supreme Court case, *Tarasoff v Regents of the Univ. of California,* 17 Cal 3d 425; 131 Cal Rptr 14; 551 P2d 334 (1976). *Davis v Lhim,* 124 Mich App 291, 298-301; 335 NW2d 481 (1983), rev'd on other grounds sub nom *Canon v Thumudo,* 430 Mich 326; 422 N.W. 2d 688 (1988). In *Tarasoff,* the California Supreme Court held that psychiatrists have a duty to warn or protect a third person if the psychiatrists "in fact determined that [the patient] presented a serious danger of violence to [the third person], or pursuant to the standards of their profession should have so determined, but nevertheless failed to exercise reasonable care to protect [the third person] from that danger." *Tarasoff,* 17 Cal 3d at 450.**

*Dawe,* 485 Mich, at 26-27.

The Court noted that although *Davis* had been reversed on other grounds, the Michigan Supreme Court had specifically declined to address at that time "whether a duty to warn should be imposed upon mental health professionals to protect third persons from dangers posed by patients." *Id.,* at 27. Hence, the Court had not foreclosed the possibility of a common-law duty of mental health professionals to warn third persons or protect them from harm by their patients in Michigan. *Id.,* at 27.:

> **Therefore, before the enactment of MCL 330.1946, psychiatrists in Michigan owed a common-law duty of reasonable care to their patients that arose out of the special relationship and, potentially, a duty to warn third persons of or protect them from potential dangers posed by their patients.** *Id.,* at 27.

Next, the Court turned to the issue of legislative intent and addressed the extent to which the Legislature intended to abrogate the mental health professional's common-law duty:

> **Keeping these rules concerning abrogation in mind, we must consider the language of MCL 330.1946 and determine whether the Legislature intended to completely abrogate a mental health professional's common-law duty to warn or protect others when it enacted the statute. We hold that it did not.** *Id.,* at 28.

The Court pointed out that the statutory duty created by MCL 330.1946 arises only if: 1) a patient makes a threat of physical violence; 2) the threat is against a reasonably identifiable person; and 3) the patient has the apparent intent and ability to carry out the threat. Therefore, on its face, the statute does not abrogate the mental health professional's "separate common-law special relationship duty." *Id.* at 29-30.

The Court also pointed out that if MCL 330.1946(1) were interpreted to completely abrogate a mental health professional's common-law duty, it would create an anomalous situation in which mental health professionals would escape liability for injuries that result from the professional's negligent management of a patient, as long as there was no threat to a reasonably identifiable person:

> **Indeed, as the Court of Appeals dissent noted, courts have held that a defendant may be held liable for harm caused by others if it was foreseeable that the defendant's own actions would lead to the infliction of harm by others.** *Dawe,* **279 Mich App at 576-577 (Smolenski, P.J., dissenting) (indicating for example, that a defendant may be liable for the harms inflicted by others who stole the defendant's car after he left the car unlocked with the keys inside and that a father who provided a loaded gun to his mentally ill son while the son was in an agitated state may be civilly liable for a murder committed by his son). Yet if MCL 330.1946(1) were interpreted to completely abrogate a mental health professional's common-law duty, mental health professionals would have**

**no duty to protect others, including their patients, from harm that results from the mental health professional's own negligent handling of a patient in the absence of a "threat as described in MCL 330.1946(1)"**

*Dawe*, 485 Mich. at 33, n 7.

The Court concluded by affirming that, in Michigan, claims may be filed, alleging breach of a mental health professional's breach of his/her common-law special relationship duty:

**We do not pass judgment on the merits of plaintiff's medical-malpractice claim on the facts of this case. Our holding is limited only to whether MCL 330.1946 abrogated all common-law duties owed by mental health professionals to their patients, which we hold it did not. Thus, there may be claims alleging a breach of a mental health professional's special relationship duty of reasonable care that are cognizable under Michigan law.**

*Id.*, at 33.

C.      **Conclusion**

In the *Dawe* case, the Michigan Supreme Court held unequivocally that MCL 330.1946 does not abrogate a mental health professional's common law duty to exercise reasonable care to protect third parties from injury by their patients.   The application of MCL 330.1946 is limited to those circumstances where the patient threatens violence against a reasonably identifiable person.  In all other circumstances, Michigan common-law applies.

Under Michigan common-law, the liability of a mental health professional for injuries caused by his/her patients may be predicated on either of two theories.  First, there is the "special relationship duty of reasonable care," which arises by virtue of the

12

psychiatrist-patient relationship. This duty requires the mental health professional to exercise reasonable care for the protection of their patients, as well as for the protection of third persons who might be injured by their patients. See *Murdock*, 454 Mich , at 54. Second, liability of the mental health professional may be predicated on the duty the common-law imposes on all persons to refrain from engaging in negligent conduct which is likely to cause foreseeable injury to a third party. In this regard, the mental health professional may be held liable for harm caused by his/her patient if it was foreseeable that the mental health professional's own negligent actions would lead to infliction of harm by the patient. See *Dawe*, 485 Mich, at 33, n 7.

In the case at bar, it is undisputed that a psychiatrist/patient relationship existed between Howard and defendants. Plaintiff's decedent was not a stranger to that relationship. She brought her husband to the emergency room of the defendant hospital and she provided defendants with Howard's history of bizarre behavior, including his reference to purchasing caskets. She participated in the psychiatric evaluation conducted by the defendant psychiatrist. When she was informed that Howard was being discharged rather than transferred to the hospital's psychiatric unit, she expressed her fear of taking Howard home.

Under the circumstances of this case, defendants had a common-law duty to exercise reasonable care for the protection of plaintiff's decedent. In addition to the allegations in plaintiff's Complaint, defendants breached their common-law duty to plaintiff's decedent in the following respects. After plaintiff's decedent had entrusted herself and her husband to defendants' control, defendants withheld vital information from plaintiff's decedent. They

did not inform her that, as of December 19, 2002, Howard's acute mental illness had not been stabilized. They did not inform her that the decision to discharge Howard was made because his insurance company declined to cover his hospital stay. They did not inform her that Howard was being discharged without an appropriate "discharge plan," thereby increasing the likelihood that his acute mental illness would deteriorate. They did not inform her that, without immediate hospitalization and treatment, and without an appropriate discharge plan, Howard would likely be a danger to himself and to others, including her.

Moreover, the information the defendant psychiatrist did provide to plaintiff's decedent was inaccurate and misleading. The defendant psychiatrist erroneously advised plaintiff's decedent that there was no basis upon which Howard could be involuntarily hospitalized. The defendant psychiatrist also agreed or suggested that it would be appropriate for Howard to stay in a hotel until his family could travel from Minnesota to Michigan. The defendant psychiatrist endorsed this "plan" even though the he knew, or should have known, that, without hospitalization, treatment and an appropriate discharge plan, Howard would continue to decompensate. Defendants' negligent acts and omissions deterred plaintiff's decedent from securing alternative psychiatric care and treatment for her husband, and from taking more aggressive measures to ensure her own safety.

Since the Michigan Supreme Court only recently clarified the relationship between MCL 330.1946 and the common-law duties that mental health professionals owe to third parties, plaintiff should be permitted to amend her NOI, Complaint, and Affidavit of Merit

14

to plead the additional common-law theories of liability outlined above, which are consistent with the holding and analysis set forth in the *Dawe* opinion.

Respectfully submitted,

SMITH & GIBSON, P.C.

By:

JOSEPH C. SMITH (P25480)
JULIE A. GIBSON (P34619)
Attorneys for Plaintiff
2000 Town Center, Suite 1900
Southfield, MI 48075
(248) 351-8737

Dated:  October 15, 2010

15